# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **JIMMY LONG, # 1898990** § § | |
| *Plaintiff,* § § | |
| **v.** § § § | **CIVIL NO.** |
| **PAMELA K. WAGNER and PATIENCE** § § | **SA-19-CV-570-FB(ESC)** |
| **T. CAIN, Medical Practitioners,** § § | |
| *Defendants.* § § | |

## SHOW CAUSE ORDER

Before the Court is the Civil Rights Complaint [#1] filed by plaintiff, Jimmy Long ("Plaintiff"), pursuant to 42 U.S.C. § 1983. Plaintiff is ordered to file an amended complaint clarifying his allegations and, to the extent possible, curing the Complaint's legal deficiencies, which are described below.

### I. Legal Standard

According to 28 U.S.C. § 1915A(b)(1), this Court is required to screen any civil complaint in which a prisoner seeks relief against a government entity, officer, or employee and dismiss the complaint if the court determines it is frivolous, malicious, or fails to state a claim on which relief may be granted. *See also* 28 U.S.C. § 1915(e)(2)(B) (directing court to dismiss case filed *in forma pauperis* at any time if it is determined that the action is (i) frivolous or malicious or (ii) fails to state a claim on which relief may be granted).

An action is frivolous where there is no arguable legal or factual basis for the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.

1999) (internal quotation and citation omitted). A complaint is factually frivolous when "the facts alleged are 'fantastic or delusional scenarios' or the legal theory upon which a complaint relies is 'indisputably meritless.'" *Eason v. Thaler*, 14 F.3d 8, n.5 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327–28).

In evaluating whether a complaint states a claim under § 1915A(b)(1) and § 1915(e)(2)(B), this Court applies the same standards governing dismissals pursuant to Rule 12(b)(6). *See DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007)). These factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id.* at 555–56.

## II. Deficiencies in Plaintiff's Complaint

Plaintiff, who is currently incarcerated at the Texas Department of Criminal Justice ("TDCJ") - Estelle Unit, alleges that prior to April 8, 2018, he was physically active and worked out five days a week. However, on April 9, 2018, he discovered he had no feelings from his abdomen to his feet and could barely walk. He advised an officer he needed emergency medical care but after calling medical, the officer relayed that medical requested Plaintiff submit an I-60 or sick call request. Plaintiff states he wrote an I-60 to medical explaining his need for emergency medical care. In his grievance, which is attached to his Complaint, Plaintiff clarifies that he sent the I-60 on April 13, 2018. That same day, Plaintiff was seen by a medical

practitioner. Plaintiff states that as he walked from his cell to medical, he explained to the officer escorting him that he needed to hold the rail so he would not fall. Plaintiff appears to suggest that although he was tripping over his feet and required assistance to walk, he was not offered the use of a wheelchair.

Plaintiff was seen by Ms. Wagner, who initially determined, upon hearing Plaintiff's symptoms, that he had suffered a stroke; however, upon seeing the difficulty Plaintiff was experiencing in walking, Ms. Wagner opined that perhaps he had pulled a muscle. Plaintiff states he asked to be transferred to a cell on a lower level but was told to go back to his cell. Plaintiff states he walked back and hurt himself.

Three days later, Plaintiff states he was in extreme pain and had difficulty holding the rail to walk down the steps from his cell to the day room. He asked an officer if he could be moved to a lower level but states no one tried to help him. On April 17, 2018, an officer advised him he was to go to medical for an x-ray. When the officer saw he was having difficulty walking, he obtained a wheelchair for the Plaintiff. Plaintiff states his x-ray came back normal even though "at that time [he] had lymphadenopathy poking out [the] right side of [his] low neck, and [his] body was numb."

After twenty days, Plaintiff continued to experience severe pain. He asked the officers and nurse whether they gave him the wrong medicine. Further, he states that although he hurt himself walking, it seemed like "the officer in medical did not care."

On May 7, 2018, an officer came to his cell and asked him if he wanted to go to the day room. Plaintiff states agreed to go to the day room but asked that medical be called because his body was weak, and it was very hard for him to walk. Plaintiff states he had difficulty walking and moving his feet; as a result, he fell down the stairs. Plaintiff was assisted and told that

medical would be called. However, Plaintiff states that medical never arrived, and when it was time to return to his cell, he told an officer he fell down the stairs and was not going to walk back up. Plaintiff reports the officer told him to come out of the day room now or get a case. When Plaintiff attempted to do so, he fell again. Plaintiff states that this time, the officer saw he was hurt, and the rank officer was called, who arrived with a wheel chair and took him to medical. Plaintiff reports he was seen by Ms. Cain. He advised her his body was numb from the waist down and that he had tightness and pain across his lower back. Plaintiff asked to go to the hospital but was allegedly told it would be a waste of money. Ms. Cain reportedly diagnosed Plaintiff as having a pulled muscle and/or nerve pain and had him moved to a lower cell.

Plaintiff reports that ultimately, he was diagnosed with leg weakness, "mass of spinal cord," tuberculosis, and lymphadenopathy of head and neck. He states he was in a wheelchair for eight months, on a walker for eight months, and that he wears medical shoes and a back brace throughout the day.

Plaintiff attaches copies of two grievances he filed. In the first, dated April 11, 2018, Plaintiff states that when he went to medical, he was told there was no sign of a stroke. Plaintiff was also told he was scheduled for UTMB in a week.[1] He states that although he asked to be moved to a different cell, he was not and as a result, the following day, he fell several times. The response to Plaintiff's grievance stated:

> You were seen by a medical provider on 4/13/18 regarding the complaint of your legs going numb. You were issued medication and an expedited referral was initiated on your behalf. X-rays were ordered. The X-rays were normal. You were seen again on 5/7/18. Additional medication was ordered. You were provided assistive devices and your restrictions were updated. You were provided reassurance of your upcoming specialty appointment. At the time of evaluation, the provider found no critical symptoms which would require emergent offsite care. Your nerve conduction study was completed within the next week on

---

[1] This appears to be a reference to the University of Texas Medical Branch- TDCJ Hospital.

> 5/14/18. An infirmary placement was completed and you were reassigned to McConnell on 5/31/18.

In his second grievance, dated December 21, 2018, Plaintiff complains that medical staff were unprofessional and refused to do lab work or take him to be X-rayed. He also alleges he requested officers to take him to medical but medical refused to see him "a few times." He states medical refused to send him to the hospital because it would cost too much and as a result, he developed full blown tuberculosis in his spinal column.

For a prisoner to state a claim for the denial of adequate medical attention, the prisoner must allege the defendants were deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1978). Deliberate indifference is a high standard; the prisoner must show he has or had a serious medical condition, and the prison officers or authorities knowingly ignored his complaint, refused to provide him care, or deliberately mistreated him. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755–56 (5th Cir. 2001). An incorrect diagnosis, unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference, "nor does a prisoner's disagreement with his medical treatment, absent extraordinary circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). This deliberate indifference standard is applicable to both convicted prisoners and pre-trial detainees. *See Hare v. Corinth*, 74 F.3d 633, 639, 647–48 (5th Cir. 1996).

Plaintiff brings this suit against Pamela K. Wagner and Patience T. Cain, alleging he was denied medical care, which resulted in his injuries. Plaintiff's current pleading fails to allege facts that would support a claim for deliberate indifference to his serious medical needs. In his Complaint, Plaintiff acknowledges he received medical attention. However, he contends he was not seen immediately and when he was seen, he did not receive the proper treatment and/or was not diagnosed properly. As a result, his symptoms worsened. At best, Plaintiff has alleged he

received negligent treatment, and mere negligence will not give rise to Section 1983 liability for constitutionally inadequate medical care. *See Gobert*, 463 F.3d at 346.

As stated above, the standard for liability in this context is higher than in the malpractice context. In response to this Order, Plaintiff should specifically state who refused to provide him medical care and/or who deliberately mistreated him and when and how they did so. Further, he should clarify whether he was injured by any allegedly deficient care, and if so, he should describe those injuries.

### III. Right to Amend

Before dismissal of his Complaint, Plaintiff is entitled to amend to attempt to cure any deficiencies. *See Neitzke*, 490 U.S. at 329. Therefore,

**IT IS ORDERED** that within twenty-one days of the date of this Order, Plaintiff must show cause why his Complaint should not be dismissed pursuant to §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1), for failure to state a non-frivolous claim, by filing an amended complaint (of no more than twenty (20) pages) that cures these deficiencies. Plaintiff should present his amended claims by using the § 1983 complaint form, as he did before. The Clerk of Court is directed to provide Plaintiff with another copy of the Section 1983 form.

If Plaintiff fails to comply with this Order, his Complaint can also be dismissed for failure to prosecute and failure to comply with this Order. *See* Fed. R. Civ. P. 41(b).

SIGNED this 22nd day of August, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE